[No. 20460. In Bank. — December 31, 1888.]

# THE PEOPLE, RESPONDENT, *v.* W. F. ROZELLE, APPELLANT.

CRIMINAL LAW — ACCESSARY BEFORE THE FACT — INFORMATION. — By section 971 of the Penal Code, the distinction between an accessary before the fact and a principal is abrogated, and an accessary must now be prosecuted, tried, and punished as a principal. It is sufficient to charge the accessary directly with having himself committed the act, and the acts constituting him an accessary may be proved under such charge; but if the information charges facts sufficient to constitute the defendant such accessary at common law, it sufficiently charges him as principal under the statute, and need not allege further matter which might be proven without pleading, if the defendant had been charged directly as principal.

ID. — THROWING VITRIOL UPON THE PERSON OF ANOTHER — AIDING AND ABETTING — SUFFICENCY OF INFORMATION. — An information charging a defendant with encouraging and advising, and also with aiding, assisting, and procuring, his wife to throw vitriol upon the person of another, is not demurrable, because it does not state whether, being present, he aided and abetted, or, not being present, he advised and encouraged, the commission of the crime.

ID. — PLEADING UNDER PENAL CODE. — Under the provisions of the Penal Code, the particularity of averment necessary at common law is not required. It is only necessary that the substantial facts constituting the crime shall be alleged with sufficient certainty to enable the court to pronounce a proper judgment, and the party to defend against the charge. The offense is sufficiently charged in the language of the statute without further particularity as to acts, and any defect of form not tending to the prejudice of a substantial right of the defendant must be disregarded.

ID. — CORRECTION OF JUDGMENT — PRESENCE OF DEFENDANT. — When a judgment in a criminal case is corrected, a recital in the corrected judgment that the defendant was present in person and by counsel is proof of such presence, when there is nothing to controvert its truth.

ID. — EVIDENCE — SCOPE OF CROSS-EXAMINATION OF DEFENDANT. — Section 1323 of the Penal Code does not confine the cross-examination of a defendant in a criminal action or proceeding, as to matters about which he was examined in chief, within narrower limits than in the case of any other witness, except that the court may not have such discretion as to the extent and scope of the cross-examination as in the case of other witnesses. The questions put must be within the proper limits of cross-examination, but the truth or falsity of the testimony in chief may be tested by the cross-examination in any proper way.

ID. — CROSS-EXAMINATION AS TO LETTER OF DEFENDANT — HANDWRITING. — If the defendant, upon his examination in chief, denies the commission of the offense charged, he may be cross-examined as to whether a letter which tends to contradict the denial and to show the perpetration of the crime was in his handwriting. (McFARLAND, J., dissenting.)

ID. — THROWING VITRIOL — EVIDENCE — CROSS-EXAMINATION AS TO CON-
VERSATION OF DEFENDANT. — Upon the trial of a charge of aiding,
encouraging, and advising the crime of throwing vitriol upon the person
of another, if the defendant denies the offense in his testimony in chief,
he may be cross-examined as to a conversation in which he said he would
fix up something that was new for the person injured, which would dis-
figure him so that he would not want to see another woman.

APPEAL from a judgment of the Superior Court of
Los Angeles County, and from an order denying a new
trial.

The facts are stated in the opinion of the court.

*Hugh J. & William Crawford,* and *Wells, Van Dyke, &
Lee,* for Appellant.

*Attorney-General Johnson,* for Respondent.

The information is sufficient. (Pen. Code, sec. 971.)
The court had power to make its decree conform to the
truth. (*People* v. *Murback,* 64 Cal. 370.) The judg-
ment being in fact valid, the court could not have pro-
nounced another. (*People* v. *Mess,* 65 Cal. 174.) The de-
fendant laid himself open to a cross-examination on the
whole case by denying the offense on his examination in
chief.

WORKS, J. — The appellant was charged by the infor-
mation with the crime of aiding and abetting his wife,
Grettie Rozelle, in willfully and maliciously throwing
vitriol upon the person of another, with the intent to in-
jure the flesh and disfigure the body of such person, was
tried by a jury, found guilty, and sentenced to imprison-
ment in the state prison for nine years.

There was a demurrer to the information, on the
ground that the offense charged was not set forth therein
with sufficient certainty, and that it did not conform to
sections 951, 952, and 953 of the Penal Code, which de-
murrer was overruled. There was also a motion in

arrest of judgment, on substantially the same grounds, which was denied.

The charging part of the indictment is as follows:—

"The said W. F. Rozelle, on the eleventh day of May, A. D. 1887, at the county and state aforesaid, did unlawfully, willfully, wickedly, maliciously, and feloniously, encourage, advise, aid, and assist, and procure one Grettie Rozelle, his wife, to throw, place, and pour a caustic chemical, corrosive acid, and burning substance, commonly called and known as vitriol, upon the person of another, to wit, one C. R. Petrie, with the intent to injure the person and disfigure the body of said C. R. Petrie, and did, on divers dates, and at sundry and several times before said date and time, so as aforesaid, advise, encourage, and assist, and on said date did procure said Grettie Rozelle, his wife, to throw and pour said substance, on said eleventh day of May, upon the person of said Petrie, with said intent; and on said eleventh day of May aforesaid, she, the said Grettie Rozelle, did unlawfully, wickedly, willfully, maliciously, and feloniously, place, put, pour, and throw upon the head, face, and person of C. R. Petrie, a caustic chemical, corrosive acid, and burning substance, commonly called and known as vitriol, with the intent then and there to injure the flesh and disfigure the person and body of the said C. R. Petrie, in pursuance of, and by reason of, and through and on account of, the encouragement, assistance, advice, aid, and procurement of the said W. F. Rozelle."

The specific objection to the information, as disclosed in appellant's brief, is, that it does not charge whether the defendant was absent or present at the time of the commission of the offense.

The information charges the defendant in such manner as would, at common law, and under the earlier provisions of the Penal Code, if the facts were well pleaded, have constituted him an accessary before the fact.

The Penal Code, section 31, provides: "All persons con-

cerned in the commission of a crime, whether it be a
felony or misdemeanor, and whether they directly com-
mit the act constituting the offense, or *aid and abet in its
commission,* or *not being present, have advised and en-
couraged its commission,* . . . . are principals in any
crime so committed."

. The following section provides who shall be acces-
saries. (Pen. Code, sec. 32.)

. There are two classes of cases mentioned in section 31:
1. Where the person shall aid and abet in the commis-
sion of the offense; and 2. Where, *not being present,* he
shall have advised and encouraged its commission.

The information must contain " a statement of the *acts*
constituting the offense, in concise language, and in
such manner as to enable a person of common under-
standing to know what is intended." (Pen. Code, sec.
950.)

The distinction between an accessary before the fact
and a principal is abrogated, and one who would for-
merly have been an accessary before the fact must now
be prosecuted, tried, and punished as a principal. (Pen.
Code, sec. 971.)

If the defendant is not charged, in general terms, as a
principal, but it is attempted to allege the facts showing
the offense to have been committed by another, and that
he aided and abetted, or encouraged and advised, the
perpetration of the crime, such facts must be stated as
would formerly have constituted the defendant an ac-
cessary. (*People* v. *Schwartz,* 32 Cal. 160, 164; *People* v.
*Trim,* 39 Cal. 75, 79; *People* v. *Campbell,* 40 Cal. 129.)

The information in this case charges that the defend-
ant did *encourage and advise,* and also that he did *aid,
assist, and procure* one Grettie Rozelle to commit the of-
fense, but whether, *being present,* he aided and abetted, or
*not being present,* he advised and encouraged, is not al-
leged.

. In the case of *People* v. *Schwartz, supra,* this court said:

"Where a party is proceeded against as an accessary, it is better to pursue the course attempted in this case, and charge him as such, rather than as principal, because such a course, if not absolutely necessary, is certainly more consistent with our system of pleading, which favors a statement of the facts constituting the offense, as near as may be, precisely as they occurred. But care should be taken to state the acts of the defendant as fully as they are stated in the statute. When that has been done, there can be no question as to the sufficiency of the indictment on that score, as this court has repeatedly held. Now, without undertaking to say that this indictment is positively bad where it charges the acts which made the defendant an accessary, we think it is not in that respect what it ought to be. It does not fully come up to the language of the statute, which defines an accessary,—'An accessary is he or she who stands by and aids, abets, or assists, or who, not being present aiding, abetting, or assisting, hath advised and encouraged the perpetration of the crime.' (Act concerning crimes, sec. 11.) Here are two modes of action, either of which renders the actor an accessary. If the former be the true one in a given case, let the indictment follow the statute and allege that the defendant 'stood by, aided, abetted, and assisted,' etc., and so as to the latter. If it be doubted as to which of the two modes is the true one, let both be charged, and all questions of variance between the allegations of the indictment and the testimony will then be avoided."

The question was left open, however, the indictment having been held to be bad on other grounds.

The question was again presented in *People* v. *Campbell*, 40 Cal. 129, in which the rule as laid down in *People* v. *Schwartz, supra,* was approved.

The defendant might properly have been charged directly as a principal. In other words, it might have been charged, in direct terms, that he committed the act.

(Pen. Code, sec. 971.)    And this is much the better and safer practice.    (*People* v. *Outeveras*, 48 Cal. 19.)

Under section 971 of the Penal Code, "all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, *shall* hereafter be prosecuted, tried, and punished as principals, and no other facts *need* be alleged in any indictment or information against such an accessary than are required in an indictment or information against his principal."

It seems to be imperatively required by the section referred to that in the prosecution of an offense such as is attempted to be charged here, the defendant must be accused and tried as a principal. And, as no other facts need be stated than are required in an indictment or information against the principal, he might properly have been charged directly with having himself committed the act. (*People* v. *Outeveras, supra; Baxter* v. *People*, 3 Gilm. 381.) But the code expressly provides that the distinction between an accessary before the fact and a principal, in cases of felony, is abrogated. (Pen. Code, sec. 971.) In other words, one who, at common law, would have been guilty as an accessary is, under the statute, guilty as a principal.

This being the case, an information which states facts sufficient to constitute a defendant an accessary at common law shows him to be guilty as a principal under the statute.

Therefore, to allege such facts as would have been sufficient to show his guilt as an accessary, at common law, is to charge him "as a principal" under the statute.

It may be further said that, under the liberal provisions of the Penal Code, designed to avoid technicality and promote justice, the particularity of averment necessary at common law is no longer required. (*People* v. *Cronin*, 34 Cal. 208; *People* v. *King*, 27 Cal. 511; 87 Am.

Dec. 95.) It is only necessary that the substantial facts constituting the crime shall appear in the information with sufficient certainty to enable the court to pronounce a proper judgment, and the party to defend against the charge. (Pen. Code, sec. 959; *People* v. *Dolan,* 9 Cal. 576, 583; *People* v. *Ah Woo,* 28 Cal. 205.)

And this court has frequently held it to be sufficient to charge the offense in the language of the statute without stating the acts necessary to constitute the offense. (*People* v. *Murray,* 67 Cal. 103.)

So it is provided that no indictment is insufficient, nor can the trial, judgment, or other proceeding thereon be affected, by reason of any defect or imperfection in matter of form which does not tend to the prejudice of a substantial right of the defendant. (Pen. Code, sec. 960; *People* v. *Ferris,* 56 Cal. 442; *People* v. *Hong Ah Duck,* 61 Cal. 387.)

The objection urged here against the information is, that it does not allege whether the defendant was present aiding and abetting, or, not being present, advised and encouraged the perpetration of the crime, and that therefore it does not set out the acts constituting the offense with sufficient certainty to enable the defendant to defend against the charge. Viewing the information in the light of the authorities above cited, we must hold it to be sufficient. As we have seen, the defendant might have been charged as a principal. This would have given him no notice of the fact that acts showing the actual commission of the offense by another, and that he merely aided and abetted in the perpetration of the crime, would be relied upon for his conviction, and yet this court has held that, under such an information, such acts might be proved. (*People* v. *Outeveras,* 48 Cal. 19.) If so, the information in the present case was more specific than the law required. It did inform him that his alleged crime consisted, not in the perpetration of the offense by his own hand, but in aiding, abetting, and

procuring some one else to perpetrate it. The fact that the information did not go further, and allege whether he was present or absent from the scene of the crime at the time of the commission of the alleged acts on his part, could not affect his substantial rights, and is a matter about which he has no cause to complain.

Beside, it may be fairly said that the information shows that some of the acts committed by him were not done at the time and place of the perpetration of the crime, as it is alleged that he did, on divers dates, and at sundry and several times *before said date,* encourage and assist. It might, with equal propriety, be said to charge that he was also present at the time, and procured the commission of the offense, as it is alleged that he did, *on said date,* procure said Grettie Rozelle to throw and pour said substance upon the person of said Petrie.

We think the information was sufficiently specific and certain, and that the demurrer to it was properly overruled.

It is urged that the judgment was corrected in the absence of the defendant, and that this was error. The record itself shows directly to the contrary. As corrected, it recites that the defendant was present in person and by counsel. There is nothing to controvert the truth of this recital, and we must be bound by it.

The defendant was examined as a witness in his own behalf, and denied, in general terms, that he aided, abetted, counseled, or encouraged the commission of the offense charged. On cross-examination, a letter was shown him, and he was asked whether it was in his handwriting. Objection was made that it was not a proper cross-examination. The objection was overruled. The defendant then declined to answer, on the ground that it would have a tendency to degrade his character, and no answer was required of him. It is said in the briefs that the letter was subsequently proved to be in his handwriting, and admitted in evidence; but as the

contents of the letter shown the defendant were not dis-
closed, we do not know from the record before us that it
is the same. But conceding the letter, finally introduced,
to have been the one about which the defendant was
questioned, we are clear that the court committed no
error in overruling the objection. The defendant had
denied explicitly that he had committed the offense
charged. The letter introduced in evidence contained
statements tending to contradict this denial, and to show
that he had perpetrated the crime. If the witness had
not been the defendant on trial, there could be no ques-
tion as to the competency of the evidence on cross-ex-
amination, as it tended directly to contradict his evidence
in chief. It is contended that because he was the de-
fendant on trial, a different rule must prevail; that the
cross-examination must, under the code, be confined to
the subject-matter of the examination in chief. The
code provides: "Section 1323. A defendant in a crim-
inal action or proceeding cannot be compelled to be a
witness against himself; but if he offers himself as a
witness, he may be cross-examined by the counsel for
the people *as to all matters about which he was examined in
chief.*"

The impression seems to prevail that the section
quoted has the effect to confine the examination of a de-
fendant to narrower limits than in the case of any other
witness. We do not so understand it. He can only be
cross-examined as to matters about which he was exam-
ined in chief. The rule is precisely the same as to any
other witness. So far as other witnesses are concerned,
however, the court is allowed some discretion as to the
extent and scope of the cross-examination that might
not be allowed in case of the defendant. But no such
question arises here. It must be remembered, also, that
the fact that a defendant offers himself as a witness as
to a particular matter does not give the prosecution the
right to make him a witness for the people and examine

him generally. (*People* v. *O'Brien,* 66 Cal. 602.) The
questions put must be in cross-examination, and can go
no further. It is contended by counsel that the defend-
ant was not asked about a letter in his examination in
chief, and therefore it was not a "matter" about which
he could be cross-examined. This would be giving the
statute a construction so narrow as in many cases to cut
off, almost entirely, the important right of cross-exami-
nation. The matter about which the defendant was ex-
amined in chief was whether or not he had committed the
acts charged in the information. The inquiry was such
that he could cover the whole case with a denial. The
matter to be tested by a cross-examination was the truth
or falsity of this denial. Suppose the defendant had
been asked: Did you on a certain day have a conversa-
tion with A? and it had been proposed to prove by him,
on such cross-examination, that he expressly admitted
to A, in such conversation, that he did commit the act
charged. Counsel might have said, He has not been
asked about a conversation in his examination in chief,
therefore you cannot inquire about it on cross-examina-
tion; it is not a matter about which he has testified. It
would hardly be seriously contended, we think, that such
a conversation could not be asked for on cross-examina-
tion, under the circumstances of this case. Now, can it
make any difference that, instead of asking him for such
a conversation, a letter is handed him containing the
same or similar statements, and he is asked: "Did you
write this letter?" Certainly not. The fact that, in
order to avoid the effect of such evidence, he is driven
to decline to answer on the ground that it will tend to
degrade or criminate him, thus, it may be, injuring his
case before the jury, cannot alter the rule as to the com-
petency of the evidence. The question as to the scope
allowed in the cross-examination of a defendant, under
the section of the code referred to, has been before this
court in other cases. In the case of *People* v. *McGungill,*

41 Cal. 431, it was said: "The fact that defendant offered himself as a witness in his own behalf did not, as to him, change or modify the rules of practice with reference to the proper limits of a cross-examination of a witness." See also, to the same effect, *People* v. *Dennis*, 39 Cal. 634; *People* v. *Russell*, 46 Cal. 121; *People* v. *Reinhart*, 39 Cal. 449; *People* v. *Johnson*, 57 Cal. 571; *People* v. *Beck*, 58 Cal. 212; *People* v. *O'Brien*, 66 Cal. 602. The objection to the question asked was properly overruled.

Defendant was also asked if he did not have a conversation with one Westerfield, in which he—defendant—said he would fix up something that was new for Petrie, which would disfigure him so that he would not want to see another woman. The defendant, having denied all knowledge of and intent to injure Petrie, or that he had participated in, or advised, or encouraged the act resulting in such injury, the evidence was material and competent for the reasons above stated.

The judgment and order denying a new trial are affirmed.

Searls, C. J., Thornton, J., Sharpstein, J., and Paterson, J., concurred.

McFarland, J., concurring.— I concur in the judgment, but I dissent from that part of the opinion of the court which holds that the defendant was properly asked, upon cross-examination, to prove the handwriting of a letter to which he had made no reference in his examination in chief. The letter was not a matter "about which he was examined in chief," within the meaning of section 1323 of the Penal Code. My views upon that question are fully stated in my dissenting opinion in *People* v. *Meyer*, 75 Cal. 383. But in the case at bar I think that no material injury was done the defendant by the error.