PEOPLE, Respondent, v. WM. SNELLIE, Appellant.

No. 2959; September 16, 1871.

Witness—Impeachment.—A Witness Should not be Subjected to Public Insult simply to gratify the spleen of the opposing party in the case, or his attorney, who may be injured by his evidence, or merely to depreciate him before the jury; and compulsion upon a witness to respond to questions material only as affecting his character should be exercised with due regard to this principle.

Witness—Impeachment.—While Evidence Other Than That of the Witness Himself, offered to impeach him, must be confined to evidence of general reputation, he may be asked as to collateral facts affecting his standing and having some bearing on his credibility.

Witness—Impeachment.—While It is Proper to Prove Independent Collateral Facts in order to place the character of a witness prop-

erly before the jury, such facts must be established by the best evidence; parol evidence will not be admissible when it appears that better evidence can be had.

APPEAL from Twelfth Judicial District, San Francisco County.

Attorney General for respondent; G. Y. Tyler for appellant.

TEMPLE, J.—The defendant was tried and convicted upon an indictment for grand larceny. On the trial he testified in his own behalf, and on his cross-examination stated that he had been in jail on this charge for five months. He was then asked if this was the only charge for which he had been put in jail. The question was objected to, but the objection having been overruled, witness said he had been arrested for assault and battery. He was then asked if he had been arrested for larceny. Objection being made was overruled, the judge remarking at the time: "He is not bound to answer it, but the question whether he has ever been arrested and confined on such a charge may be asked." Witness then answered the question in the affirmative. It is claimed that these rulings are erroneous under the doctrine of People v. Reinhart, 39 Cal. 449.

On the other side, it is contended that the examination was proper, as tending to show the degree of credibility to which the witness was entitled, to exhibit his true character and standing before the jury, and that the evidence did not tend to prove the contents of a record by parol, but only to show that he had been accused of and arrested for an offense.

There is no more vexed question in the law of evidence than as to the latitude which should be allowed on cross-examination to bring before the court and jury the exact character of the witness upon whose testimony they must depend. The arguments in favor of and against allowing compulsory examination upon matters, which are material only as affecting the character of the witness, have often been stated with great force. It is certainly desirable that a witness should not be subject to public insult simply to gratify the feelings of a party or his attorney, who may be injured by his evidence, nor should he be permitted to be insulted merely to depreciate

him in the estimation of the jury. He ought not to be aggravated merely to test his power of self-control, or to throw him from his ground, nor ought the veil be lifted from transactions long past which do not throw light upon the present character of the witness, nor ought inquiries to be allowed which, while they tend to degrade, throw no light upon the credibility of the witness. The cases upon the subject are not very satisfactory, but in practice, at all events, it is settled that while other evidence offered to impeach a witness must be confined to evidence of general reputation, the witness himself may be asked as to collateral acts affecting his standing and having some bearing upon his credibility. Nor will he be privileged from answering simply because the answer will tend to depreciate him in the estimation of the community. The evidence must be such as would directly show his infamy. The authorities on the subject are compiled in Starkie on Evidence, p. 208; 1 Greenl., sec. 454 et seq.; 2 Phill. Ev. 421.

But while it is proper to prove independent collateral acts, in order to place the character of the witness properly before the jury, such facts must be established by the best evidence, and parol evidence will not be admissible when it appears that better evidence can be had. Thus a person might be asked if he had not been discharged from a situation on suspicion of theft, but he could not be asked if he had been convicted of larceny, for this implies better evidence. In this case the question was whether he had not been imprisoned on a charge of larceny. It is true an arrest may, under extraordinary circumstances, be made when no written charge has been made and no warrant issued. In such case, however, the charge is required to be made in writing with all convenient haste, and the case is exceptional. The presumption, I think, is, that when a person is put in jail upon a criminal charge, the accusation is in writing, which in such case would constitute the best evidence of the fact. One reason given why it would not be safe to allow the witness to state whether he has been convicted is because he may be mistaken as to the nature of the conviction. The same reason applies with equal force to the case at bar, and it is equally within the rule that the best evidence the case admits of should be produced.

Judgment reversed and cause remanded for a new trial.

We concur: Sprague, J.; Rhodes, C. J.

CROCKETT, J.—I dissent. There is no presumption that necessarily, or even prima facie, an arrest for larceny was founded on a written accusation. On the contrary, in numerous instances, the arrest is lawfully made, without a warrant or written accusation, when the offender is taken in the very act of committing the crime. But if the law expressly required a written accusation as preliminary to the arrest, nevertheless the accused may, in fact, have been arrested on a verbal accusation only; and for all the purposes for which the witness in this case was interrogated on that subject, the fact of the arrest, under such circumstances, would have been as damaging to him as though the forms of law had been strictly complied with in making the arrest. And even though it had been conceded that the accusation was in writing, I am not prepared to say that the court erred in admitting the testimony. In People v. Reinhart, 39 Cal. 449, the attempt was made to prove by parol that the party had been convicted of a felony. We held the proof to be incompetent, on the ground that the record was the best evidence of the conviction. But an arrest is an act in pais, and may be proved by parol; and my impression is that the cause of the arrest, to wit, that the party was suspected of having committed a particular offense, may be shown in the same method, even though there was a written accusation. The sole object of such evidence is to show that the witness had labored under so strong a suspicion of having committed a particular offense as to induce his arrest; and I am inclined to think this fact may be shown by parol, even though the accusation was reduced to writing. It will seriously obstruct the administration of justice in criminal cases if such evidence be inadmissible. When the accused becomes a witness on his own behalf, it may frequently become important to show, as affecting his credibility, that on previous occasions, and perhaps in remote localities, or in other states and possibly in a foreign country, he had been arrested on criminal charges. If the fact cannot be shown by parol, it will be practically impossible to prove it at all in numerous cases. My impression is that such evidence is admissible, even though the accusation be in writing; but it is unnecessary to decide the point in this case.

WALLACE, J.—The latitude which should be allowed
on cross-examination (upon which the opinion of the ma-
jority of the court proceeds) is a question which I do not
understand to be presented in the record before us. The case
is here upon a bill of exceptions—intended, in the language
of the statute, "to present the questions of law upon which
the exceptions were taken"—and it sets forth that the prisoner
had been examined in chief as a witness in his own behalf,
and that upon his cross-examination by the district attorney
that officer made certain inquiries of him to which his counsel
objected because the evidence sought to be elicited thereby
was "not the best evidence in degree." Had it been the
intention to question the mere limit to which a cross-examina-
tion might be properly carried or to claim that in point of
law that limit had been exceeded, the bill of exceptions would
doubtless have so stated, and with the requisite precisions.
So, had it been the purpose of the prisoner to challenge the
right of the district attorney to cross-examine him at all, the
bill of exceptions would have so set it forth. But when, as
here, we are distinctly informed by the record that the objec-
tion upon which the prisoner relies is that the evidence itself
is "not the best evidence in degree," we are pointed to a recog-
nized rule governing the production of evidence in courts of
justice and, ordinarily, requiring it to be the best in degree
in the power of the party offering it, and our judgment must
be confined to a consideration of that rule and its application
to the facts appearing.

And I am of opinion that the rule referred to was not in-
fringed in permitting the prisoner to be cross-examined in the
manner complained of.

The object of the district attorney was to prove the fact
that the prisoner had been arrested upon a charge of larceny—
this was a fact, if at all, in pais; it was an act done, if done
at all, irrespective of the existence of any record authorizing,
or supposed to authorize, it to be done; as a mere fact occur-
ring, it would, therefore, still exist though it had been con-
ceded that no writing had ever existed to which it bore any
relation or had any possible reference. The distinction in
this respect between the proof of such a fact upon the one
hand and the proof of the fact of conviction of an offense

44

upon the other hand is most obvious—the latter is necessarily matter of record; the conviction is the record itself, and it cannot be seen or understood except as it is found there. The cases in this court (People v. Reinhart, 39 Cal. 449; People v. McDonald, 39 Cal. 697) relied upon by the prisoner's counsel themselves illustrate the distinction indicated. I therefore dissent from the prevailing opinion and from the judgment of reversal, and am of opinion that the judgment of the court below should be affirmed.